UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
DARVIN MARTE,                                          :     Case No.:
                                                       :
              Plaintiff,                     :
                                                       :     **COMPLAINT**
   v.                                                  :
                                                       :
SUCCESS ACADEMY CHARTER SCHOOLS, INC.                  :     **Jury Trial Demanded**
                                                       :
              Defendant.                     :
-----------------------------------------------------------------------X

Plaintiff Darvin Marte ("Plaintiff" or "Mr. Marte") by and through his attorneys, Mizrahi Kroub, LLP, as and for his Complaint against Defendant Success Academy Charter Schools, Inc. ("Success Academy" or "Defendant") alleges as follows:

**PRELIMINARY STATEMENT**

1.     Ideally, employers should treat those employed under them with respect, equality, and without discrimination. Unfortunately, this ideal does not seem to be present at Success Academy, which has an unwelcome environment that discriminates based on employees' gender. This is evident from the situation regarding Mr. Marte, who, on many occasions, was subject to disparate treatment based on his gender as a man. Ultimately, Mr. Marte was terminated after requesting that he be treated with the same respect as his female counterparts.

2.     Mr. Marte has been discriminated against based on his gender and was subject to a retaliatory termination as a result.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship among the parties and this action involves an amount in controversy exceeding $75,000, excluding interests and costs.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper in this District because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.

**PARTIES**

5. Plaintiff Mr. Marte is a male former employee of Success Academy who currently resides in Arizona.

6. Defendant Success Academy is an employer formed under the law of the state of Delaware with its principal place of business in New York, New York.

**FACTUAL ALLEGATIONS**

7. Success Academy is a network of 53 public charter schools in New York City.

8. Around June 2023, Mr. Marte responded to a company website listing for an Operations Associate position at Success Academy.

9. The job listing stated that the role serves as the "primary point of contact" for families and master of ceremonies for a "wide array of projects."

10. The position required the candidate to have basic knowledge of technology and the ability to provide basic Information Technology ("IT") support to students and teachers.

11. Additionally, the role required a candidate with "great" verbal and written communication skills, "strong" organizational and planning skills, and the ability to be "open" and "able" to implement feedback quickly.

12. As Mr. Marte had these traits, along with a background in IT, he applied for the

position.

13. During the interview Mr. Marte was told that his responsibilities would be that which is typical of someone working at an IT help desk.

14. Specifically, Mr. Marte was told that Success Academy would need his expertise to assist them with Chromebook, as they had become a paper free school.

15. During this time, Mr. Marte was contacted by Kara Della Vecchia, a talent recruiter at Success Academy who believed he would be a great fit for the role.

16. As Mr. Marte was certainly qualified for the job, he was eager to accept Success Academy's offer of a full-time Operations Associate position.

17. Thus, on August 1, 2023, Mr. Marte began working at Success Academy.

18. Mr. Marte approached his role with enthusiasm and was eager to join his new team.

19. Mr. Marte proved to be a dedicated employee and committed to his job.

20. He was often thanked for the excellent work he was doing as an Operations Associate.

21. For example, on October 20, 2023, Amy Mullen, Senior Operations Associate, emailed Mr. Marte and complimented him on his work by saying that he had a done a great job planning, executing, taking initiative, and that the project ran smoothly as a result.

22. She went on to say that he should keep up the good work.

23. Additionally, the Business Operations Manager, Ana Alonso, publicly congratulated Mr. Marte because he was instrumental in Success Academy being "the first school to get 100% Middle School and High School Completion."

24. Mr. Marte was even approached by another Operations Associate who asked Mr. Marte to share "the key to getting your good results."

25. However, Mr. Marte's employment was not free from discrimination.

26. During his first week, Mr. Marte, an African American male, noticed a difference in how he was being treated as opposed to his female counterparts.

27. While Mr. Marte was not bothered by being the only male Operations Associate, he did notice that it had an impact on his job.

28. Mr. Marte was asked by Ms. Alonso to carry heavy boxes throughout the office.

29. She kept excitedly saying that the office had not had a male around in so long and thus she was happy that she could ask him to move tables, desks, and other heavy objects.

30. Whenever the office received a package, or required heavy lifting it became Mr. Marte's responsibility to carry them to their respective locations.

31. Although the individual items may have been light on their own, the boxes contained supplies that were shipped in bulk and therefore extremely heavy to lift.

32. When Mr. Marte asked that the carrying be divided more evenly among the other Operations Associates, Ms. Alonso would say that it was solely his responsibility.

33. Additionally, Ms. Alonso would force him to carry heavy metal barricades and set them up for student dismissal.

34. Mr. Marte would have to go outside and engage in the physical labor of organizing these metal barricades.

35. Mr. Marte again would question whether this was part of the job he applied for.

36. It was especially suspicious to him as his female counterparts were not asked to perform such tasks.

37. As it was a shared office space, Mr. Marte witnessed the other Operations Associates busy with activities such as attendance data entries, social media postings, and monitoring the students during their clubs.

38. For the most part, the assigned activities of the other Operations Associates did not include physical labor.

39. This was very difficult for Mr. Marte as it minimized his opportunity to perform his actual duty as an Operations Associate, specifically at the IT help desk.

40. Mr. Marte felt isolated and singled out from his team members as he was often forced to leave the office and do work in other areas, limiting his ability to prove himself in his actual department.

41. Thus, it did not take long for Mr. Marte to notice a pattern of the requests made by Ms. Alonso.

42. It was clear that Mr. Marte was being forced to handle tasks that required a traditionally "masculine" skill set.

43. For example, Ms. Alonso forced Mr. Marte to manage security when parents came to visit the school during school functions.

44. Specifically, Mr. Marte was forced to handle the indoor security every day.

45. As was the case with the heavy lifting, this seemed to be outside of Mr. Marte's responsibility because none of the other Operations Associates on his team were asked to do this job daily.

46. On several occasions Mr. Marte was even threatened by parents while performing this function.

47. Fearful, Mr. Marte requested that he no longer be forced to handle security.

48. However, Success Academy dismissed Mr. Marte's requests, and he was simply told that he must continue to do as Ms. Alonso asks.

49. Responses such as these made it clear that Mr. Marte was being treated differently than his female counterparts.

50. While Ms. Alonso claims that this work was rotated fairly amongst the different Operations Associates, this was simply untrue.

51. While other Operations Associates may have been asked to carry boxes or handle security and dismissal on occasion, Mr. Marte was the only Operations Associate that was forced to do this work on a regular basis.

52. Additionally, the other Operations Associates were not expected to handle the heavy barricades and were not generally outside for the arrival of students.

53. As the only male Operations Associate, Mr. Marte was singled out and expected to do these tasks regularly.

54. When Mr. Marte would complain about being asked to do these tasks every day, Success Academy would simply respond that Mr. Marte must assume these tasks regularly as they wished to remain consistent.

55. Responses such as these prove that Success Academy was not rotating the responsibilities as they claim.

56. By September of 2023, things got especially difficult when Mr. Marte developed a rash as a result of handling the rough cardboard boxes and heavy metals.

57. Each time Mr. Marte was forced to come in contact with these materials his skin would become inflamed and irritated.

58. The boxes would also cut through his skin and cause him severe pain.

59. Mr. Marte decided to start wearing gloves to minimize the pain.

60. However, the gloves did not offer him adequate protection and thus Mr. Marte was forced to see a doctor for treatment.

61. By October 30, 2023, Mr. Marte was diagnosed with Contact Atopic Dermatitis and was prescribed several medications.

62. His doctor warned him to stay away from handling cardboard boxes and touching the metal barricades.

63. Therefore, Mr. Marte informed Ms. Alonso that he was advised to stay away from the cardboard boxes.

64. However, Ms. Alonso rudely dismissed him and refused to look at his doctor's note.

65. Instead, she stated that Mr. Marte must handle the issue with Human Resources ("HR").

66. Although handling these materials was not part of Mr. Marte's job description, HR stated that they would need to investigate to determine whether granting an accommodation would be feasible.

67. However, while HR was conducting this investigation, Ms. Alonso forced Mr. Marte to continue working with these materials even though she knew the effect they had on his skin.

68. Therefore, for months Mr. Marte continued to carry boxes and interact with these materials that were damaging to his skin.

69. Mr. Marte tried to reason with Ms. Alonso and ask that she distribute the work evenly amongst his counterparts, yet she would respond rudely and give him more to do as punishment.

70. On January 26, 2024, Mr. Marte reported the discriminatory behavior to Taylor Diebold, HR Associate.

71. Specifically, Mr. Marte explained that Ms. Alonso was retaliating against him and forcing him to take on tasks that he was not qualified to do and or were beyond his role responsibilities.

72. Ms. Diebold then scheduled a virtual meeting with Mr. Marte, Human Resources, and Shanice Grant, Regional Operations Manager, to discuss Mr. Marte's concerns.

73. At the last minute, Ms. Grant notified Mr. Marte that she would be unable to attend the meeting.

74. At the meeting HR discussed Mr. Marte's job responsibilities and his concerns about the way in which he felt he was being mistreated.

75. Following the call on January 26, 2024, Ms. Diebold sent Mr. Marte an email confirming that he would be granted a 14-day accommodation to be exempt from handling the problematic materials.

76. Surprisingly, Ms. Diebold added that handling such materials was an "essential" part of Mr. Marte's role.

77. Ms. Diebold also emailed Mr. Marte that he should "ensure" that he is "assuming the best intent of those on your team."

78. Ms. Diebold's email made it clear that HR did not value Mr. Marte's concerns and were instead justifying Ms. Alonso's behavior and assuming her intentions were pure.

79. It is important to note that during the 14-day period, Ms. Alonso did not ask the other Operations Associates (who were female) to take over Mr. Marte's duties that were supposedly an essential part of an Operations Associate's role.

80. Instead, she called the janitorial staff to assume such tasks.

81. This confirmed Mr. Marte's suspicion that the work Ms. Alonso was requesting from him belonged to the janitorial and security staff and not to an Operations Associate.

82. As Ms. Alonso continued to discriminate against Mr. Marte, on February 2, 2024, he reported the discrimination to Ms. Diebold once more.

83. On February 7, 2024, Mr. Marte followed up on his complaint in an email to Ms.

8

Grant where he explained that he raised concerns regarding the way in which he was being severely mistreated by Ms. Alonso to Ms. Diebold.

84. As a result of his complaint, a meeting was scheduled for February 14, 2024, to discuss the matter further.

85. During the meeting, Mr. Marte was repeatedly threatened and told that refusing to work with the materials would result in him being unable to complete his necessary tasks.

86. However, Operations Associates are expected to do IT work, assist teachers with their classrooms, work with challenging students, address the needs of the talent department, and create social media posts, among other duties.

87. Mr. Marte's condition did not prevent him from doing the aforementioned tasks and thus the actual work of an Operations Associate.

88. Mr. Marte explained that he was still able to complete the tasks expected of the female Operations Associates.

89. However, despite his argument, HR concluded the meeting informing Mr. Marte that he must provide a doctor's note giving him clearance to work with these materials in order to keep his job.

90. HR further stated that they would need to "re-evaluate" Mr. Marte's employment based on his "accommodation" request.

91. As Mr. Marte's condition persisted (after the 14-day period) his doctor wrote him an additional note requesting that he refrain from working with these materials indefinitely.

92. However, HR forced Mr. Marte to take a two-day unpaid leave of absence as of February 28, 2024, until he obtained a more detailed note from his doctor regarding his medical condition.

93. Success Academy was fully aware that Mr. Marte had an appointment scheduled

for August 2, 2024, and was not able to get an appointment with the doctor in just two days because of the doctor's schedule.

94. On February 29, 2024, before the two-day period was up, Mr. Marte was informed that Success Academy could no longer "accommodate" his "request" because the doctor's note he previously provided was "lacking information."

95. However, the note was extremely clear, and his actual job did not even require him to handle these materials that they were now forcing him to work with.

96. On March 1, 2024, Mr. Marte was again called by HR and told that Success Academy would be parting ways with him.

97. Mr. Marte was informed that as of that moment his employment was immediately terminated.

98. As mentioned, this was especially upsetting to Mr. Marte because he did not need any accommodation to continue doing the work he was hired for.

99. Success Academy did not require any of the females in his position to request an accommodation to prevent handling boxes or heavy metals.

100. Success Academy completely changed Mr. Marte's position simply because he was the only male in that role.

101. Thus, it is clear Mr. Marte was discriminated against for being a male in a predominately female position at Success Academy.

102. Simply put, Mr. Marte was being punished because of his gender.

103. Success Academy had been discriminating against Mr. Marte from the start of his employment because he is a male.

104. Throughout his employment, Mr. Marte was treated differently and less favorably than his female counterparts.

105. Had Mr. Marte not been assigned different duties based on his gender he would not have developed this rash and then been forced to request an "accommodation" to maintain his employment.

106. As the failure to provide a "proper" accommodation request was the reason for his termination, it is apparent that Mr. Marte was ultimately terminated because of his gender.

107. The duties assigned to Mr. Marte were clearly beyond his job responsibilities and a punishment for being male.

108. Success Academy retaliated against Mr. Marte and added additional and more dangerous responsibilities as further punishment after he voiced his concern about his mistreatment.

109. Finally, Success Academy fabricated that Mr. Marte had a disability that they could not accommodate as another way to retaliate against him and terminate his employment.

110. Mr. Marte did not have a disability, rather he developed a skin condition as a result of Defendant's wrongful action.

111. Mr. Marte has suffered greatly because of Success Academy's misconduct.

112. Mr. Marte was constantly belittled and left to feel extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed at the hands of Success Academy.

113. Mr. Marte suffers and continues to suffer physical pain and emotional distress because of Success Academy's actions.

### FIRST CAUSE OF ACTION
**(Discrimination Under the NYSHRL)**
*Against Defendant*

114. Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

115. Defendant has discriminated against Plaintiff on the basis of his gender in

violation of the NYSHRL by subjecting Plaintiff to disparate treatment based upon his gender including, but not limited to, discrimination, and a hostile work environment.

116. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

117. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress for which he is entitled to an award of monetary damages and other relief.

**SECOND CAUSE OF ACTION**
**(Retaliation in Violation of NYSHRL)**
*Against Defendant*

118. Plaintiff hereby repeats, reiterates, and re-alleges the preceding as though set forth fully herein.

119. By the actions described above, Defendant retaliated against Plaintiff in violation of the NYSHRL after he complained of the discrimination perpetrated against him by Defendant.

120. As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which he is entitled to an award of monetary damages and other relief.

121. As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress for which he is entitled to an award of monetary damages and other relief.

### THIRD CAUSE OF ACTION
**(Discrimination Under the NYCHRL)**
*Against Defendant*

122.  Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

123.  Defendant has discriminated against Plaintiff on the basis of his gender in violation of the NYCHRL by subjecting Plaintiff to disparate treatment based upon his gender including, but not limited to, discrimination, and a hostile work environment.

124.  As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

125.  As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress for which he is entitled to an award of monetary damages and other relief.

### FOURTH CAUSE OF ACTION
**(Retaliation in Violation of NYCHRL)**
*Against Defendant*

126.  Plaintiff hereby repeats, reiterates, and re-alleges the preceding as though set forth fully herein.

127.  By the actions described above, Defendant retaliated against Plaintiff in violation of the NYCHRL after he complained of the discrimination perpetrated against his by Defendant.

128.  As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which he is entitled to an award of monetary damages and other relief.

129.  As a direct and proximate result of Defendant's unlawful retaliatory conduct in

violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress for which he is entitled to an award of monetary damages and other relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter judgment in his favor and against Defendant, containing the following relief:

    A.    A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the State of New York;

    B.    An injunction and order permanently restraining Defendant and their partners, officers, owners, officials, agents, successors, employees and/or representatives, and any and all persons acting in concert with and/or on behalf of them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

    C.    An award of damages against Defendant, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

    D.    An award of damages against Defendant, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his physical injuries, mental anguish, psychological harm, and emotional distress;

    E.    An award of punitive damages and any applicable penalties in an amount to be determined at trial;

    F.    Prejudgment interest on all amounts due;

    G.    An award of fees and costs that Plaintiff has incurred in this action, as well Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and,

H. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: January 24, 2025
   New York, New York       Respectfully submitted,

                  **MIZRAHI KROUB LLP**

                  By: _____
                    Sagar K. Shah

                  225 Broadway, 39th Floor
                  New York, NY 10007
                  Telephone: (212) 595-6200
                  sshah@mizrahikroub.com
                  *Counsel for Plaintiff*